## BUMPASS & HICKS v. TAGGART.

EVIDENCE—*When presumed legal.*—Where the record shows nothing to the contrary, it must be presumed that the evidence received by the court below was legal.

DEFAULT—*Admits truth of allegations*—Where the defendant has been duly notified and makes no answer, he thereby admits the truth of the allegations in the declaration.

NOTE MAY BE STAMPED AFTER SUIT COMMENCED.—A note not stamped in accordance with the *stamp act,* does not thereby become void or invalidated, but may be stamped, even after suit commenced, to the satisfaction of the court.

STAMP ACT—*How construed*—While Congress has the power to prescribe evidence, and especially what shall be instruments of evidence in the Federal courts, it is powerless to prescribe them for State courts, and the act of Congress of June 30, 1864, known as the *"stamp act,"* is not to be so construed.

PARTNERS—*Suit against—requisite of pleadings.*—In declaration on promissory note, signed by defendants, by their firm name, it is sufficient to allege that they made the note, without stating that they were partners or setting forth in the body of the declaration, the manner or style in which they executed the note.

*Appeal from Phillips Circuit Court.*

HON. JOHN E. BENNETT, Circuit Judge.

*Palmer & Sanders,* for appellants.

Before the note could have been offered as evidence in a court of law, it should have been stamped with the proper amount. *Dorris v. Grace, 24 Ark. 326.* There is a fatal variance between the note sued on and the one offered in evidence. See *notes to Ky. Code, page 420-422. 1 Metc. 339, ib. 430.* There is an entire failure of proof as to John H. Hicks. *Notes to Ky. Code, p. 424, g. g. et seq; Gasper v. Adams, 28 Barb. 441.*

*Clark & Williams,* for appellee.

That it was not necessary to allege the partnership in order

to connect Hicks with the note (it being signed in the firm name of C. M. Bumpass & Co.) See *Sweeney v. Burnside, 17-38. Trowbridge v. Pilcher, 4-157; Kent v. Wells, 21-41.*

HARRINGTON, Special Judge.

This is a case brought by Edward R. Taggart, plaintiff in the court below, against Creed M. Bumpass and John H. Hicks, upon a promissory note.

The complaint is as follows:

"Edward R. Taggart, plaintiff,
vs.
Creed M. Bumpass and John H. Hicks, defendants.
} Phillips circuit court. Complaint at law.

"The plaintiff, Edward R. Taggart, states that the defendants, Creed M. Bumpass and John H. Hicks, by their promissory note, dated July 3, 1869, agreed to pay to the plaintiff one thousand and eighty-eight dollars, on or before the first day of January next after said date; which note is herewith filed and made a part of this complaint. No part of said debt has been paid; wherefore he prays judgment for his debt and for other relief."

The note filed therewith is in the following words:

"HELENA, ARK., July 3, 1869.

"On or before the first day of January next we promise to pay to the order of E. R. Taggart one thousand and eighty-eight dollars for value received.

"C. M. BUMPASS & CO."

This action was commenced on the 7th day of May, 1870, and on the same day an affidavit was made by the attorney for plaintiff, and filed in the case, setting forth that he believed there was no good and valid defense to said action upon the merits of the case, and that, if a defense was made, it would be for delay merely. Service was duly made on each of said defendants, and, no answer being made, judgment was given the plaintiff.

An appeal, with supersedeas, was granted by this court, and the appellants now ask that said judgment be reversed, and allege as grounds therefor:

*First.* That the note sued on and offered in evidence was not stamped, as required by law.

*Second.* That the note described in the complaint is not the instrument exhibited therewith.

As no answer was made in this case, in the court below, no ruling of that court can properly be before us, unless it fall under the maxim that "all acts of an inferior court are presumed to be rightly done, in a superior court;" and, as the record shows nothing to the contrary, it must be presumed that the evidence of indebtedness received by the court below was legal evidence.

Besides, notice was duly given the defendants, and no answer made; thereby the defendants admitted the truth of the allegations contained in the declaration. See *12 Ark. 599, and authorities there cited.*

Or, if the note were sufficiently stamped, or without stamp, it would not thereby become void, but could, even after suit had been commenced thereon, have been stamped to the satisfaction of the law. See *24 Ark. 326*—and our statute expressly declares "that no judgment will be reversed, impaired or affected for any defect of form contained in the record, pleadings, process, entries, returns, or other proceedings therein, which by law might be amended by the court in which such judgment was rendered; but such defects and imperfections shall be supplied and amended by the Supreme Court, or shall be *deemed to have been supplied* and amended." See *Gould's Digest, chapter 134, section 36.*

Again, no instrument of writing is subject to the invalidating effect of the stamp act, unless the stamp was omitted "with intent to evade the provisions of this act." *Act of Congress, June 30, 1864, section 158.* And, in order to defeat a recovery on an unstamped note, it must appear not only that the

note is unstamped, but that the stamp has been *fraudulently* omitted. *34 Cal., 167; 10 Allen, 250, and 47 Barbour, 187.*

But the case before us does not require us to go to the extent we have already gone, in sustaining the court below in giving judgment for the plaintiff. Yet, another question presents itself, involving a closer consideration of the law itself—the act of Congress of June 30, 1864, entitled "An act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes," and especially section —, which provides "that hereafter no deed, instrument, document, writing or paper required by law to be stamped, which has been signed or issued without being duly stamped, or a deficient stamp, nor any copy thereof, shall be recorded, or admitted, or used as evidence in any court, until a legal stamp or stamps, denoting the amount of tax, shall have been affixed thereto as prescribed by law."

Does this refer to State courts?

This law was placed upon our books in the time of the nation's need and the nation's haste, and so willing were the people at the time to provide the revenue to support the government, that courts, under the pressure of public sentiment, may not have well considered the statutes, and have given it a more liberal interpretation than Congress ever intended it to have, for we cannot presume that Congress intended to do what was clearly unwarranted by the constitution of the United States.

The object of this act is to raise money to support the government, and for this purpose vast powers were granted by the States, in forming the constitution of the United States, to the Congress established by it; but all powers not delegated to the United States by the constitution, nor prohibited by it to the States, were reserved to the States respectively, or to the people.

The character of our government, somewhat complex, is fitly expressed in the motto on the seal of the United States—"*E pluribus unum.*" It is one government composed of many governments. Each government must be, and is, equally sovereign

within its sphere, and Congress is just as much bound to respect and not to impede the free exercise, by the States of their retained rights, as States are to respect and to not impede the free exercise by the federal government, of all her delegated rights. See, on this subject, the very able opinion of Chief Justice MARSHALL, in *McCulloch v. State of Maryland, 4 Wheaton, 316.*

While, then, the power to levy taxes, for the purposes indicated in the constitution, may be admitted, it cannot be admitted that it can be so exercised as take, from the domain of State legislation, such subjects as are properly and naturally confided to it, and the care of which has not been surrendered to Congress by the States.

The court, whose action we are reviewing, was created by the State, and is maintained by the State, and created and maintained by those rights and powers inherent and reserved to the States, and in no manner prohibited by the federal constitution. To this court, the laws of the State are supreme rules of action. Can Congress, then, come into this court and change her rules of action? In other words, can Congress declare what instrument shall be or shall not be evidence in a State court, in a case therein pending, growing entirely out of a domestic transaction, and which the laws of the State declare shall be evidence?

We do not think it requires any argument to prove that Congress, under the constitution, has no such power, and under pretense of levying taxes, cannot so direct that power as to enter into a State court, and take from it the powers with which the State laws have vested it.

. The Supreme Court of Illinois, in *Craig v. Dimock*, said: "To hold that Congress, in the exercise of the taxing power, can enter into State courts and prescribe what shall be evidence therein, is so revolting to all our notions of federal and State powers as to compel us to refuse to yield acquiescence in such a doctrine. By admitting it, the power and sovereignty of the State over legitimate subjects of State power and sovereignty,

is at once annihilated." *47 Ill., 308, also, 38 Ill., 343 and 349.*

And the Supreme Court of Massachusetts, in *Carpenter v. Snelling*, said: "We are not aware that this power" (referring to the application of this law to State courts) "has ever been judicially sanctioned." There are numerous and weighty arguments against its existence, and we cannot hold that there was an intention to exercise it; whereas, in the provision now under consideration, the language is fairly susceptible of a meaning, which will give it full operation and effect within the recognized scope of the constitutional authority of Congress." *97 Mass., 457.*

We will not deny the power of Congress to require such instruments to be stamped, nor the consequent power to punish by fine, intentional evasion of the law.

By conceding this, we yield all that is necessary to enable the Government to carry into full effect the taxing power, and at the same time sustain and uphold, in its utmost limit, the exclusive power of the State to say what shall be evidence in her own courts of justice, in a domestic transaction wholly unconnected in every respect with the General Government.

It is not questioned that Congress has power to prescribe evidence, and especially what shall be instruments of evidence, in the Federal courts, but it is powerless to prescribe them for State courts.

Since, then, the act does, in terms, prescribe such rules to State courts, we must conclude that the provisions of the act were only intended to apply to Federal courts; for we can not, by implication, hold that the intention of Congress was to invade the jurisdiction of the State in the administration of justice between her citizens.

The second ground urged by the appellant for reversing the judgment, is that the note described in the complaint is not the instrument exhibited.

The complaint sets forth that Creed M. Bumpass and John H. Hicks, by their promissory note, agreed to pay, etc., said note, filed herewith, etc. And the note filed agrees in every

particular—date, terms and amount—with the declaration, except it is signed "C. M. Bumpass & Co."

No plea of *non assumpsit*, or other, has been made by the defendants; neither is it claimed nor alleged that Creed M. Bumpass and John H. Hicks are not the copartners, C. M. Bumpass & Co. And the practice is well settled that it is sufficient, in a declaration upon a promissory note, signed by the defendants by their name, to allege that they made the note, without stating that they were partners, or setting forth in the body of the declaration the manner or style in which they executed the note. See *17 Ark., 38; 4 Ark., 157, and 21 Ark., 411.*

The appellee claims that the proceedings have all been regular, and according to law, and, by his attorney, indorses upon the record that he has carefully examined the case, and believes that the appeal is prosecuted for the purpose of delay merely.

Thereupon he moves the court to affirm the judgment with ten per cent. damages, as a delay case.

And the court, having examined the record, and finding no error in the proceedings, are of opinion that the appeal was prosecuted for delay merely.

Judgment is affirmed.

Bennett, J. did not sit in this case.

Hon. S. R. Harrington Special Supreme Judge.